IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHIRLEY L. CARTER, )<br>)<br>  Plaintiff, )<br>)<br>  v. )<br>)<br>JO ANNE B. BARNHART )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>  Defendant. ) | CIVIL ACTION NO. 2:05cv643-CSC<br>(WO) |

**MEMORANDUM OPINION**

The plaintiff, Shirley L. Carter ("Carter"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Carter then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to entry of final judgment by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Based on

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be remanded.

## I. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## II. Introduction

Carter was 53 years old at the time of the hearing before the ALJ. (R. 203.) She has a twelfth-grade education. (*Id.*) Carter's prior work experience includes work as a cook, cashier, babysitter, and kitchen helper. (R. 213.) Carter alleges that she became disabled due to degenerative disc disease, sciatica, scoliosis, and high blood pressure. (R. 206, 208.) Following the hearing, the ALJ concluded that Carter has severe impairments of obesity and degenerative disc disease. (R. 23.) He also determined that Carter has non-severe

3

impairments of hypertension and a thyroid nodule. (*Id.*) The ALJ found that Carter was able to return to her past relevant work as a cashier, waitress, and cook. (R. 24.) Accordingly, the ALJ concluded that Carter is not disabled. (R. 25.)

### III. Discussion

Carter raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of Carter's specific arguments because the court concludes that the ALJ erred as a matter of law, and, thus, this case is due to be remanded for further proceedings.

Carter alleges that she is disabled due to degenerative disc disease, sciatica, scoliosis, and high blood pressure. (R. 206, 208.) Carter began seeking treatment for back pain in August of 1992. (R. 170.) The medical records show that Carter received chiropractic care on a routine basis from August of 1992 until July of 1997 and from October of 2002 until May of 2003.[4] Medical notes indicate that, on April 3, 1997, x-rays of Carter's spine "revealed virtually no disc between L4-5; curvature of the spine." (R. 162.) A chiropractor noted on May 1, 2003, that additional x-rays showed "no significant difference." (R. 161.)

On June 27, 2003, Dr. Scott A. Bell, a consultative physician, conducted an examination of Carter. Dr. Bell noted that Carter "seem[ed] to show exaggeration of

---

[4] In addition, Carter received chiropractic treatment on April 15, 1999, and May 3, 2002. (R. 162.)

symptoms and poor effort such as with standing and ambulating." (R. 172.) In addition, Dr. Bell determined that Carter "seemed to exaggerate balance difficulties such as holding onto the wall and table but when standing seemed pretty steady" and that "[s]he was able to stand on her toes but still used support to walk on her toes and did seem to have some difficulty with the heel walk." (Id.) Dr. Bell diagnosed Carter as having "low back pain with no radicular findings and exaggeration of symptoms" and noted that there was "[n]o evidence of scoliosis although [she] has been told by physicians she does have scoliosis." (R. 174.) Dr. Bell assessed that Carter should be able "to stand and walk six hours with limitations basically secondary to valgus deformity of knees, obesity, some decreased range of motion of her ankles and decreased range of motion of her back" and that "not much weight [should be attributed to Carter's] balance difficulties because it was inconsistent and seemed to be exaggerated." (*Id*.)

On June 27, 2003, the same day of Dr. Bell's examination, x-rays of Carter's spine were conducted. (R. 175.) Three days later, the radiologist dictated his findings, stating that "AP lateral views of the lumbosacral spine show prominent facet joint sclerosis at the L5-S1 levels" and that "[t]here is marked degenerative disc disease at the L4-5 level with disc space narrowing and endplate sclerosis." (*I*d.) The radiologist determined that Carter suffered from "[s]evere degerative disc disease at the l4-5 level with prominent facet joint arthopathy, sclerosis at L5-S1, lateral recess and foraminal stenosis." (*Id*.)

In his analysis, the ALJ gave substantial weight to the consultative physician's opinion regarding Carter's functional abilities, specifically noting that Dr. Bell's opinion was

5

supported by his clinical examinations and testing.[5] (R. 24.)  An administrative law judge has a duty to develop a full and fair record.  *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985).  When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected one opinion regarding the plaintiff's capacity for work over another. In this case, the ALJ failed to reconcile Dr. Bell's assessment that Carter suffers from "low back pain with no radicular findings and exaggeration of symptoms" (R. 172) and the radiologist's subsequent finding that Carter has "marked degenerative disc disease at the L4-5 level with disc space narrowing and endplate sclerosis" and "[s]evere degerative disc disease at the l4-5 level with prominent facet joint arthopathy, sclerosis at L5-S1, lateral recess and foraminal stenosis." (R. 175.)  Because the ALJ did not resolve the apparent conflict between the radiologist's findings and Dr. Bell's assessment, it is impossible for the court to evaluate whether the ALJ's conclusion that Dr. Bell's determination should be accorded great weight is supported by substantial evidence.

In addition, the ALJ found that the record contained no objective signs or findings that could reasonably be expected to produce the degree and intensity of pain and limitations as alleged. (R. 24.)  However, the ALJ failed to explain or reconcile objective medical records demonstrating that Carter suffers from severe degenerative disc disease.  For instance, x-rays conducted on June 27, 2003, indicate that Carter suffered from "[s]evere degenerative disc

---

[5] In addition, the ALJ found that the record contained no objective signs or findings that could reasonably be expected to produce the degree and intensity of pain and limitations as alleged. (R. 24.)

disease at the l4-5 level with prominent facet joint arthopathy" and "marked degenerative disc disease at the L4-5 level with disc space narrowing and endplate sclerosis." (R. 175.) In addition, the chiropractor's notes indicate that x-rays conducted in April 1997 showed "virtually no disc between L4-5" and that subsequent x-rays "showed no significant difference."[6] (R. 162.) The court recognizes that a chiropractor is not considered an "acceptable source" and, thus, his opinion cannot establish the existence of an impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). *See also Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004). Nonetheless, x-rays may be considered when determining whether a claimant's subjective pain testimony is supported by objective medical evidence. *See*, *e.g.*, *Moore v. Barnhart*, 348 F.Supp.2d 1292, 1299 (M.D. Ala. 2004); *Golden v. Barnhart*, 347 F.Supp.2d 1074, 1078 n.9 (N.D. Ala. 2004). Because the ALJ failed to consider objective medical records demonstrating that Carter suffers from severe degenerative disc disease, the court is unable to determine whether the ALJ's determination is supported by substantial evidence.

---

[6] The court notes that, although the ALJ found that the chiropractor's opinion that Carter was "totally restricted and thus unable to function at a productive level of work" should be accorded little weight because the chiropractor's own treatment notes indicate that "x-rays of the lumbar spine showed no significant difference," the ALJ's finding is a mischaracterization of the evidence. (R. 24.) It is obvious that the chiropractor's May 1, 2003, notation indicating "no significant difference" was a reference to differences between Carter's previous x-rays conducted on April 3, 1997, in which the chiropractor noted that Carter had "virtually no disc between L4-5," and the May 1, 2003 x-rays. (R. 161-62.) The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion.

Based on the foregoing, the court concludes that without developing the record more fully by resolving the conflicts in the evidence, the ALJ could not make an informed decision on Carter's residual functional capacity based on the record before him. Thus, the court cannot determine whether the ALJ's decision is supported by substantial evidence.

## IV. Conclusion

Accordingly, this case be and is hereby reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

Done this 7th day of August, 2006.

        /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE